JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} In August 2007, defendant-appellant, John Gilbert, was convicted, after a jury trial, of one count of murder and two counts of aggravated robbery, all with firearm specifications. The convictions exposed Gilbert to a sentence of 18 years to life on the murder charge and three to 10 years on the aggravated robbery charges, i.e., a minimum of 18 years to life in prison, and a maximum of 28 years to life in prison.
 {¶ 2} While awaiting sentencing, Gilbert wrote several letters to the prosecutor asking to testify at co-defendant John Kent's trial "to let my statement come out." In October 2007, Gilbert testified against Kent.
 {¶ 3} Prior to Gilbert's testimony, the following discussion was had among the prosecutor, defense counsel, and trial judge:
 {¶ 4} "[THE PROSECUTOR]: I would like the record to reflect that last month the State of Ohio successfully prosecuted John Gilbert. He was found guilty of the crime of murder, as well as the crimes of aggravated robbery with gun specifications. He has not been sentenced by you, Judge. I believe that will take place following the conclusion of the trial that we are in right now.
 {¶ 5} "I've had extensive discussions with Mr. Gilbert's attorneys concerning his appearance on the witness stand and testimony in this case. And the concerns I've received from the defense team is, first of all, John Gilbert is willing to testify-he has sent letters indicating that as well-is willing to testify, *Page 4 
but that there needs to be an assurance by the State of Ohio that should he take the stand in this case that anything that he says concerning the circumstances surrounding the homicide would not be used against himshould a reviewing court or this court choose to grant him either a newtrial or the court of appeals send his case back for a new trial.
 {¶ 6} "So there has to be an assurance or request for immunity from the State of Ohio to allow Mr. Gilbert to testify in order for his rights to be adequately protected.
 {¶ 7} "So that's what we are doing right now, Judge, requesting that Mr. Gilbert receive the assurance from the court that anything that he says or testifies to here today cannot be used against him in anysubsequent hearing or prosecution.
 {¶ 8} "[DEFENSE COUNSEL]: I think it's accurate to say that there have been Fifth Amendment concerns on behalf of Mr. Gilbert, and that he would not be willing to testify unless there are protections offered him in regards to his Fifth Amendment rights, and that's how we get here today.
 {¶ 9} "THE COURT: So subject to the immunity he would be willing to offer his testimony in the trial?
 {¶ 10} "[DEFENSE COUNSEL]: That's my understanding, your Honor, that if this court orders him under the prosecutor's request for immunity that he would then testify. *Page 5 
 {¶ 11} "THE COURT: Okay. Then with that in mind, the court hereby grants the State's request for a grant of immunity as to any and all statements that he may make during his testimony, both on direct and, of course, cross-examination, in this trial.
 {¶ 12} "[THE PROSECUTOR]: Thank you, your Honor.
 {¶ 13} "THE COURT: Very good.
 {¶ 14} "[DEFENSE COUNSEL]: And I assume then that Mr. Gilbert is ordered to testify under that?
 {¶ 15} "THE COURT: Subject to that, yes." (Emphasis added.)
 {¶ 16} On direct examination, Gilbert testified that he understood that the grant of immunity meant that anything he testified to in Kent's trial could not be used against him "in any further proceeding, should [he] be lucky enough to get a new trial or the court of appeals send [his] case back." He testified further that he was facing a maximum of 28 years to life in prison, but was hopeful that, after considering his testimony against Kent, the judge would sentence him to the minimum sentence (18 years to life). Gilbert then testified regarding his and Kent's involvement in the murder.
 {¶ 17} On the day of Gilbert's sentencing, defense counsel filed a motion to dismiss the case against Gilbert. Counsel argued that, in Ohio, the only grant of immunity available is "transactional immunity" whereby once a witness has been granted immunity, a trial court lacks jurisdiction to provide a forum for any *Page 6 
further prosecution of that witness, or to punish that witness for any crime committed during the transaction about which the witness testified. Therefore, counsel argued, because Gilbert had been granted immunity, that immunity must have been transactional, and hence, the trial court lacked jurisdiction to sentence him for the crimes upon which the jury had returned its guilty verdicts.
 {¶ 18} The trial court denied the motion to dismiss. The trial judge found that "the interests of justice are not to be confused with the game of `gotcha" (from the perspective of this court, an exceptionally charitable assessment of the defense motion). He further held that the "clear understanding" of all the parties with respect to the "grant of immunity" was that the immunity applied only to any subsequent proceedings in the event the appellate court reversed and/or remanded the case for further proceedings, or the trial court granted a motion for a new trial. The court then sentenced Gilbert to 18 years to life in prison on the murder conviction, with concurrent eight year terms on the aggravated robbery convictions.
 {¶ 19} In his single assignment of error, Gilbert argues that the trial court violated his federal and state due process rights in denying his motion to dismiss.
 {¶ 20} Our review of the trial court's denial of Gilbert's motion to dismiss is de novo. State v. Perry, 8th Dist. No. 89819,2008-Ohio-2368, ¶ 20, quoting Whitehall v. Khoury, 10th
Dist. No. 07AP-711, 2008-Ohio-1376. De novo review is independent and without deference to the trial court's determination. Perry, ¶ 22. *Page 7 
 {¶ 21} In Ohio, the authority to grant immunity derives from statute. Under R.C. 2945.44, the trial court may not grant immunity unless 1) the witness refuses to answer on the basis of his privilege against self-incrimination, 2) the prosecuting attorney makes a written request to the common pleas court to order the witness to answer, and 3) the court informs the witness he will receive immunity. State ex rel. Korenv. Grogan (1994), 68 Ohio St.3d 590, 1994-Ohio-327, citing State ex rel.Leis v. Outcalt (1982), 1 Ohio St.3d 147, 149. The statute further provides that if the witness complies with the court's order compelling him to answer or produce information, "he shall not be prosecuted or subjected to any criminal penalty in the courts of this state for or on account of any transaction or matter concerning which, in compliance with the order, he gave an answer or produced any information."
 {¶ 22} R.C. 2944.45 authorizes a court to grant only transactional immunity, i.e., immunity from prosecution for any criminal act about which the witness testified. Koren, supra at 592-593. The statute makes no provision for, and a trial court may not grant, use immunity, i.e., immunity which "protects the witness only from having the specific compelled testimony or the information directly or indirectly derived from the compelled testimony used as evidence against him in a later prosecution." Id. at 593, citing Anderson's Ohio Criminal Practice and Procedure (2 Ed. 191) 231, Section 52.101. Transactional immunity is broader than use immunity because it completely prohibits the government *Page 8 
from prosecuting the defendant for the immunized crimes, rather than merely preventing the use of the immunized testimony. State v.Adams, 153 Ohio App.3d 134, 2003-Ohio-3086, ¶ 31, citing Kastigar v.United States (1972), 406 U.S. 441, 453, 92 S.Ct. 1653, 32 L.Ed.2d 212.
 {¶ 23} The statutory requirements for granting transactional immunity were not met in this case. Gilbert did not refuse to testify; in fact, he wrote letters to the prosecutor asking to testify so that he could tell his story and attempt to curry favor from the trial judge at his sentencing. Second, although the prosecutor orally asked the judge to grant immunity, he made no written request for immunity, as required by statute. A trial court may exercise its discretion to grant or deny transactional immunity only after the statutory requirements are met.Leis, supra at 149. Because the statutory requirements were not met, the trial court had no authority to grant transactional immunity to Gilbert. Accordingly, we find no error in the trial court's denial of Gilbert's motion to dismiss, which was premised upon the alleged grant of transactional immunity.
 {¶ 24} It is apparent that the parties asked for the equivalent of use immunity for Gilbert in exchange for his testimony against Kent. The prosecutor clearly requested that the court give Gilbert an assurance that his testimony in Kent's case "cannot be used against him in any subsequent hearing or prosecution." Defense counsel did not dispute the prosecutor's explanation of how *Page 9 
the immunity would be utilized and before he testified, Gilbert acknowledged his understanding that the grant of immunity from the trial court meant that his testimony would not be used against him if there were a new trial. Clearly, the parties understood and agreed that the immunity sought from the trial court applied only to any later proceedings against Gilbert. However, the trial court had no authority under R.C. 2944.45 to grant such limited use immunity.
 {¶ 25} Even though the trial court erred in telling Gilbert he would receive "immunity" for his testimony, we find no prejudice to Gilbert as a result of the trial court's error. The only thing wrong in this case was the unfortunate use of the term "immunity" to describe the deal offered to Gilbert if he testified. The State concedes that although Gilbert could not receive immunity, "the State entered into an agreement" with Gilbert that his testimony would not be used against him in any subsequent prosecution. It is apparent from the transcript that Gilbert clearly understood the agreement applied only to any subsequent prosecution against him, and not to the guilty verdict already rendered by the jury. Gilbert received the benefit of the bargain: as the trial court did not grant a new trial, and this court is not reversing his conviction, [1] Gilbert's testimony will not be used against him in any further proceedings. Further, Gilbert received the minimum sentence, which he admitted was part of the reason for his testimony. *Page 10 
 {¶ 26} While Ohio does not provide for use immunity, nothing prevents the State and defendant from entering into an agreement in exchange for testimony. There was such an agreement here, it is adequately outlined in the record, and the parties involved have all lived up to their obligations under the agreement.
 {¶ 27} Accordingly, the trial court had jurisdiction to sentence Gilbert to the crimes of which the jury had found him guilty and did not err in denying his motion to dismiss.
 {¶ 28} Appellant's assignment of error is therefore overruled.
Affirmed.
It is ordered that the parties share equally costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANN DYKE, J., and MARY J. BOYLE, J., CONCUR.
[1] Other than immunity, Gilbert raised no challenges to his conviction. *Page 1